EDWIN M. BROWN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 7563.  Promulgated June 27, 1928.

*Frank C. Olive, Esq.*, and *George S. Olive, C. P. A.*, for the petitioner.

*J. E. Marshall, Esq.*, for the respondent.

OPINION.

MURDOCK: The Commissioner determined that the title to $50,000 par value preferred stock of the Standard Brick Co. was transferred to the petitioner in 1919, and that the stock was "worth par" when received. Apparently he determined under section 202 (b) of the Revenue Act of 1918, that profit in some amount resulted, but in what amount we do not know. The petitioner makes two contentions, one, that he never became the owner of the stock and consequently could not have realized any profit from the receipt of it, and another, that even if the stock was his in 1919, it was not worth $50,000.

The burden of proof to sustain these contentions was upon the petitioner, inasmuch as the determination of the Commissioner is

*prima facie* correct. The petitioner testified that he never had any written agreement in regard to this preferred stock and we are unable to determine from his testimony in regard to the oral agreement·which he claims to· have had that he did not acquire absolute title to the stock. His testimony is confusing. In the first place, he said that he was to receive the stock if the business of the company developed and was finally disposed of through a sale. The business of the company never developed and was never finally disposed of through a sale, so that if this was his agreement he never was entitled to the stock.

However, he later testified that after he had entered into the agreement with F. W. Shideler & Co. " this matter with reference to my commission had been hanging fire, and it was finally agreed upon that I should receive these five hundred shares, or $50,000 of preferred stock, and I went to my office from Frankfort, as I remember, Frankfort, Indiana, and issued the stock and at the same time had my secretary draw up an agreement which I turned over to the President of the Company at Frankfort, Indiana." The material portions of the writing to which the witness referred have been set out in our findings of fact. The sending of this letter, so far as the evidence discloses, was a purely voluntary act upon the part of the petitioner, was without consideration and was not binding upon him. It is no more binding because long after the Shideler agreement had fallen through and the stock had become worthless the petitioner returned the certificate. The agreement which immediately preceded the sending of this letter seems to have superseded the previous agreement. The witness says it was a final agreement whereby he was to receive the stock as his own. He is not sure that thereafter he did not receive dividends on the stock. Considering all of the testimony we are not convinced that the stock was his, but what is more important we are not convinced that it was not his, and the presumption in favor of the Commissioner must prevail.

The situation is much the same in regard to the value of the stock. A banker of Crawfordsville, Ind., was called as a witness by the petitioner and was questioned in regard to the value in 1919 of the preferred stock of the Standard Brick Co. He was familiar with the affairs of this company at that time and stated that in his opinion the stock was not worth 25 cents on the dollar in the early part of 1919, but that after the agreement with F. W. Shideler & Co. was entered into the stock was a little more attractive as a speculation and would bring a little higher price on the market. He also testified that the par value of the stock was greatly in excess of its real value. This was a start in the right direction, but it does not enable us to deter-

mine the value of this stock when received by the petitioner. We are unwilling to guess at the value or to disturb the Commissioner's determination. *Atlantic Casket Co.* v. *Rose*, 22 Fed. (2d) 800.

*Judgment will be entered for the respondent.*